IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HAROLD EDWIN LEAPHART, ) | |
| ) | |
| Petitioner ) | |
| ) | |
| vs. ) | |
| ) | Civil Action No.  07-465 |
| JOHN A. PALAKOVICH; THE ATTORNEY ) | Judge Nora Barry Fischer/ |
| GENERAL OF THE STATE OF ) | Magistrate Judge Amy Reynolds Hay |
| PENNSYLVANIA; and THE DISTRICT ) | |
| ATTORNEY OF THE COUNTY OF INDIANA; ) | |
| ) | |
| Respondents ) | |
| ) | |

## REPORT AND RECOMMENDATION

### RECOMMENDATION

It is recommended that the habeas petition filed pursuant to 28 U.S.C. § 2254 be

dismissed and that a certificate of appealability be denied.

### REPORT

After a jury heard all of the evidence against him, Harold Edwin Leaphart ("Petitioner")

was convicted of third degree murder in the stabbing death of a young man, and of attempted

criminal homicide and aggravated assault in the stabbing of another victim.  Because Petitioner

has failed to carry his burden to show that the state courts' dispositions of his claims were

contrary to or an unreasonable application of then-extant Supreme Court law, his petition should

be dismissed.

**Relevant Factual and Procedural History**

The following is an account of the crimes as summarized by the PCRA Court in its disposing of the PCRA petition. During the afternoon of June 15th 2001, a fight occurred between Petitioner and the murder victim, Mr. Jamar Burns. Petitioner threatened Mr. Burns at the time. After the fight, Mr. Burns called friends to assist him in an anticipated later confrontation with Petitioner. Among these friends was Mr. Anwan Wesley, the victim of the attempted murder and aggravated assault. This fight and the following events all occurred on or near the campus of Indiana University of Pennsylvania ("IUP").

Around midnight on June 15, 2001, a second fight or melee erupted between the victims and their friends on the one hand, and Petitioner and others on the other hand. The number of people involved in the fight were between 15 and 40 persons.

The Post Sentencing Court found that

When the fight started Mr. Wesley fled away from the apartment complex up a hill towards a Pappa John[']s Pizza Shop. Mr. Wesley, who is a large man, testified that he was caught from behind and began to fight with three individuals. Mr. Wesley indicated that he felt pressure in his back and that he was being struck by two by fours. During this confrontation Mr. Wesley came face to face with the Defendant and observed that the Defendant was in possession of a knife. Mr. Wesley fought with the Defendant in an attempt to disarm him. During this struggle Mr. Wesley heard someone say that Mr. Burns was down the street by himself and [sic] which time the Defendant ran in the direction of the tennis courts which were located across the street . . . .

Mr. Wesley was then taken by friends to the Pappa John's Pizza Shop where an ambulance was summoned [and transported to a hospital]. . . . He was treated for a knife wound which had penetrated his back to a point one inch from his heart. . . . .

Following the attack on Mr. Wesley, the Defendant was observed at the tennis courts with Mr. Burns. David Jones [a friend of Mr. Burns] observed the Defendant and two others beating Mr. Burns. Mr. Jones said that he observed the Defendant making a punching motion into the abdomen of Mr. Burns. Jones

testified that the Defendant had something in his hand and he assumed it was a weapon.

       After being attacked Mr. Jones observed Mr. Burns stumble while holding his stomach then fall to the ground. Mr. Jones ran to Mr. Burns' location, rolled him over and observed blood on his t-shirt. Jones attempted to provide first aid to Mr. Burns.

       Mr. Burns was taken to Indiana Hospital by medical personnel where he was pronounced dead. An autopsy was performed by Dr. Vimal Mittal a board certified forensic pathologist. Cause of death was determined to be blood loss due to a stab wound to the heart. The doctor found three stab wounds, one determined to be lethal and the other two superficial.

       . . . . During the course of the investigation law enforcement personnel searched the common areas of the Carriage House Apartment Complex [located on or near the IUP campus]. During the search Troopers located the Defendant in a janitor's closet in a laundry room. Upon discovering the Defendant he stated that he was in a fight, was beaten and was scared. When the troopers asked who he was the Defendant stated that he did not know. The Defendant was then taken into custody.

       The Defendant was then transported to the Indiana Pennsylvania State Police Barracks where he was interviewed by Trooper Timothy Lipniskis and Trooper Robert Valyo. During the course of the taped interview the Defendant admitted he had a knife during the melee and that he swung the knife but he denied stabbing anyone.

State Court Record, ("SCR"), PCRA Court slip "Opinion in support of this court's order of October 25, 2002" at 2 - 4 (hereinafter "Post Sentencing Op. at ___").

At trial Petitioner was represented by court appointed counsel other than the Public Defenders office. After sentencing and on direct appeal Petitioner was represented by the Public Defender's office.

Petitioner, through the Public Defender's office filed post sentence motions in which Petitioner alleged the ineffectiveness of trial counsel. The trial court held a hearing on the post sentencing motions and denied relief. Post Sentencing Op. Petitioner then filed a direct appeal

through counsel.[1]  In an opinion filed June 23, 2003, the Superior Court denied relief and

affirmed the trial court.  Petitioner, through the Public Defender's office then filed a petition for

allowance of appeal ("PAA") to the Pennsylvania Supreme Court.[2]  The Supreme Court denied

the PAA on March 5, 2004.

---

[1]  The following issues were raised on direct appeal to the Superior Court.

      1.  Does representation of Defendant by the Public Defender's Office on
appeal constitute a conflict of interest? . . .

      2.  Was trial counsel ineffective [in (a) advising Petitioner to not testify at
his trial; (b) failing to request a self defense and /or "Unreasonable Belief"
Voluntary Manslaughter Instructions; and (c) failing to call witnesses] ? . . .

      3.  Should the Defendant's clothes seized pursuant to the execution of a
search warrant have been suppressed due to the absence of probable cause fo the
warrant? . . . .

      4.  Did the trial court err in denying Defendant's motion for change of
venue/venire and to sequester the jury? . . . .

      5.  Was the sentence imposed excessive? . . .

SCR, Petitioner's appellate brief to Superior Court at 3 - 4.

[2]  The issues raised in the PAA were as follows:

      1.  Whether representation of Defendant by the public defender's office on
appeal constitutes a conflict of interest.

      2.  Whether Defendant was denied effective assistance of trial counsel

      3.  Whether the search warrant for Defendant's clothes was invalid as not
supported by probable cause.

SCR, PAA at 2 (the court would note that the PAA included in the SCR is missing a substantial
number of pages).

On August 31, 2004, Petitioner executed a pro se PCRA petition.[3] The PCRA court

appointed new counsel who filed an amended counseled PCRA petition.[4]  After conducting an

evidentiary hearing, the PCRA court granted relief in part and denied relief in part in an opinion

filed March 23, 2005.  The PCRA court granted Petitioner leave to file an appeal nunc pro tunc

to the Superior Court in order to appeal the discretionary aspects of the sentence.  The parties had

stipulated at the PCRA trial level that direct appellate counsel had no strategic reason for failing

to file a petition for leave to appeal the discretionary aspects of the sentence.  The PCRA court

---

[3]  In that pro se PCRA petition, he raised the following issues:

　　　(1) Appellate counsel were ineffective in failing to properly present for
review on direct appeal the issue whether the trial court abused its discretion in
sentencing Petitioner to the maximum sentence on the third degree murder charge
and in sentencing Petitioner to a further consecutive term of imprisonment on the
criminal attempt/homicide charge.  Specifically, Petitioner contended that
appellate counsel were ineffective in failing to comply with Pa.R.App.Proc.Rule
2119(f) regarding review by the Superior Court of the discretionary aspects of a
sentence.
　　　(2) Trial and appellate counsel were ineffective in failing to raise, brief and
preserve the issue of whether the Sixth Amendment to the United States
Constitution permits a sentencing judge to find facts (other than relating to a
defendant's criminal history) not in the record, nor reflected in the jury verdict or
admitted by the defendant that form the basis for determining the appropriate
sentencing range.
　　　(3) Trial and appellate counsel were ineffective in failing to raise and
preserve for appellate review the question of whether prosecution witnesses
improperly collaborated with one another and with the police and fabricated their
testimony.

Dkt. [7] at 5 - 6.

[4]  In that amended PCRA petition, the same issues were raised as were in the pro se
petition.  SCR, Counseled PCRA petition filed January 31, 2005.

otherwise denied relief.[5]  Petitioner, through the same counsel, filed an appeal to the Superior

Court which was a nunc pro tunc appeal of the discretionary aspects of the sentence as permitted

by the PCRA trial court.  In the brief to the Superior court the only issues raised were:

> 1.  Whether there is a substantial question that the sentence imposed
> violates particular fundamental norm[s] underlying the sentencing process
> because the sentence is manifestly excessive in that it is grossly disproportionate
> to the crime, particularly in light of the facts surrounding the criminal episode and
> the Defendant's background?
> 2.  Whether the trial court abused its discretion by imposing an aggregate
> minimum sentence of 26 years for Murder in the Third Degree and Aggravated
> Assault when Appellant has no criminal history, shows the possibility of
> rehabilitation, and was swept up in a large brawl involving thirty some
> combatants.

SCR, Appellant's brief to the Superior Court, at 6, dated July 12, 2005.  The Superior Court

denied relief in an opinion filed November 21, 2005, wherein the Superior Court held that

Petitioner had failed to show prejudice from his direct appellate counsel's failure to petition the

Superior Court for an appeal of the discretionary aspects of the sentence, because the Superior

Court held that no substantial question was presented as to whether the sentencing court abused

its discretion, hence, even if direct appeal counsel had filed a petition for permission to appeal

the discretionary aspects of the sentence no relief would have been proper or granted.

Accordingly, the Superior Court reversed the PCRA court's grant of relief as to this issue,

finding that notwithstanding the parties' stipulation that direct appellate counsel had no

---

[5]  Although the Petitioner had raised three issues in his counseled PCRA petition, the
PCRA trial court opinion appears to address only two of the issues, namely the ineffectiveness of
counsel for failing to file a discretionary appeal of the sentence with the Superior Court and the
ineffectiveness of counsel for failing to raise the witness collaboration and fabrication issue.  The
PCRA trial court did not address the other issue Petitioner raised, namely the question of whether
a sentencing court can find facts not found by the jury in the course of sentencing a criminal
convict, which this court will refer to in a shorthand fashion as the Apprendi/Blakely issue. See
Apprendi v. New Jersey, 530 U.S. 466 (2000); Blakely v. Washington, 542 U.S. 296 (2004).

reasonable basis for not filing such a petition for permission to appeal the discretionary aspects of

the sentence, Petitioner failed to prove prejudice from appellate counsel's failure to do so. The

Superior Court then went on to affirm the PCRA court's denial of relief as to the witness

collaboration/fabrication claim, finding that the Petitioner did not challenge that aspect of the

PCRA court's order on appeal. Apparently because the PCRA trial court did not address the

Apprendi/Blakely issue, and the issue was not raised in Petitioner's brief to the Superior Court,

the Superior Court did not address this issue in its opinion.

In December 2005, Petitioner filed in the Superior Court a pro se filing entitled "Petition

for Permission to Appeal," which that Court transferred to the Pennsylvania Supreme Court,

which that Court apparently treated as a PAA and denied it on July 19, 2006.

Petitioner then filed the current pro se habeas petition in this court. In that pro se habeas

petition, he raises the following issues as paraphrased by the court:

> **Ground One**: Petitioner was denied the right to effective assistance of counsel on
> direct appeal where a conflict interest was present in the Public Defender's office
> because that office had previously represented the victim of the murder, i.e., Mr.
> Burns, in an unrelated case.
> **Ground Two**: Trial counsel was ineffective for rendering erroneous advice about
> whether Petitioner should not testify at trial causing Petitioner to not testify at
> trial.
> **Ground Three**: Trial counsel was ineffective when trial counsel failed to request
> a self defense instruction and/or an instruction on "unreasonable belief" voluntary
> manslaughter.
> **Ground Four**: Trial counsel was ineffective for failing to call witnesses at trial,
> particularly the character witnesses and other witnesses who had seen the fight.
> **Ground Five:** The Trial Court denied Petitioner fundamental fairness in violation
> of the Fourteenth Amendment's substantive due process clause when it abused its
> discretion by allowing inadmissible evidence in against Petitioner which should
> have been suppressed because there was no probable cause in support of the
> search warrant.
> **Ground Six**:    The Trial Court denied Petitioner fundamental fairness in
> violation of the Fourteenth Amendment's substantive due process clause when it

abused its discretion by failing to grant Petitioner's motion for change of venue/venire given the adverse publicity surrounding the murder and fights. **Ground Seven**: Petitioner's rights under the Sixth, Fifth and Fourteenth Amendments were violated by the sentencing court imposing a sentence in excess of the statutory maximum based upon facts not found by the jury beyond a reasonable doubt.

See Dkt. [1] at 7-8. The respondents filed an answer. Dkt. [7] They also caused to be transmitted to this court copies of the state court record. Petitioner filed an "Appeal from the Adverse State Court denial of State Court relief entered June 23, 2003," Dkt. [10], which this Court treats as Petitioner's traverse or memorandum in support of his habeas petition.

### Applicable Legal Principles

### AEDPA Is Applicable

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (AEDPA), which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254, was enacted on April 24, 1996. Because petitioner's habeas petition was filed after AEDPA's effective date, AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

A judgment of conviction carries with it a presumption of regularity in federal court. Meyers v. Gillis, 93 F.3d 1147, 1151 (3d Cir. 1996)("On collateral attack. . . ., the state receives the presumption of regularity and all reasonable inferences.")(quoting Higgason v. Clark, 984 F.2d 203, 208 (7th Cir. 1993)); Sandoval v. Tinsley, 338 F.2d 48, 50 (10th Cir. 1964); Schlette v. California, 284 F.2d 827, 833-34 (9th Cir. 1960)("A conviction after public trial in a state court by verdict or plea of guilty places the burden on the accused to allege and prove primary facts, not inferences, that show, notwithstanding the strong presumption of constitutional regularity in

state judicial proceedings that in his prosecution the state so departed from constitutional requirements as to justify a federal court's intervention to protect the rights of the accused."). Given this presumption of regularity, it is petitioner's burden to establish, at the very least by a preponderance of the evidence,[6] that his constitutional rights were violated.  Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997)("On a petition for a writ of federal habeas corpus, the petitioner bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated.").

## AEDPA's Standard of Review

Where the state courts have reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, AEDPA provides the applicable deferential standards by which the federal habeas court is to review the state courts' disposition of that issue. See 28 U.S.C.§ 2254(d) and (e).  Section 2254 (d) and (e) provide as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>  (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant

---

[6] To the extent that petitioner is challenging the factual determinations of the state courts, he has a burden to rebut the presumption of correctness of those factual findings by clear and convincing evidence.  28 U.S.C. § 2254 (e)(1).

shall have the burden of rebutting the presumption of correctness by clear and
convincing evidence.

Moreover, it is petitioner's burden to prove the state court decision is either contrary to or an

unreasonable application of clearly established federal law.  See  Matteo v. Superintendent, SCI-

Albion, 171 F.3d 877, 888 - 89 (3d Cir. 1999)(en banc).

### Discussion

After independent review of those claims that the state courts addressed on the merits,

this Court concludes that Petitioner has failed to demonstrate that the state court disposition of

the Petitioner's claims constituted decisions that were either contrary to or an unreasonable

application of then extant Supreme Court precedent, nor did those state court decisions make an

unreasonable determination of the facts.

Ground One was addressed on the merits by the post-sentencing court.  Post Sentencing

Op. at 10 - 11.  The Superior Court addressed this issue on the merits in its opinion on direct

appeal.  Dkt. [10] at 50 to 51.   As mentioned above, Petitioner filed a traverse.  Dkt. [10].   In

the traverse, Petitioner appears to argue that the Superior Court's resolution of this issue of the

alleged conflict of his appellate counsel who were from the Public Defender's office was

contrary to or an unreasonable application of Cuyler v. Sullivan, 446 U.S. 335 (1980).  Petitioner

does not clearly explain why Cuyler requires a different outcome here.

However, that case does not lead to a conclusion that the state courts' adjudication of the

conflict-of-counsel claim was contrary to or an unreasonable of Supreme Court precedent.  The

Cuyler case involved the simultaneous representation of co-defendants in a single trial.   In

contrast, here, there was no simultaneous representation of co-defendants in a single trial.

Rather, long before Petitioner's trial had commenced, in fact, prior to the murder even occurring, the Public Defender's office had represented one of Petitioner's victims, namely, Mr. Burns, the murder victim, in a wholly unrelated case, wherein Mr. Burns was ultimately allowed to go through the ARD program, an alternative to prison and an opportunity to not have a criminal record. Because there was no simultaneous representation of two defendants, the state courts' decisions were not contrary to or an unreasonable application of Cuyler. See, e.g., Stewart v. Wolfenbarger, 468 F.3d 338, 350-51 (6th Cir. 2006) wherein the court held that

> In *Mickens v. Taylor*, 535 U.S. 162, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002), the Supreme Court found that the presumed prejudice standard of [*Cuyler v.*] *Sullivan* was clearly established only in the situation of a conflict of interest due to multiple concurrent representation. *Id*. at 175. The Supreme Court explicitly left open the question of whether the *Sullivan* standard applied to a conflict of interest due to successive representation. *Id*. at 176. This Court has consistently held that, for § 2254 cases, the Sullivan standard does not apply to claims of conflict of interest other than multiple concurrent representation; in such cases, including successive representation, the *Strickland* standard applies. . . . Thus, the initial issue is whether the instant case involves a conflict of interest based on multiple concurrent representation or on some other ground. This case does not involve multiple concurrent representation. O'Connell represented Johnson when he was arrested and charged with first degree murder. The prosecution then dismissed the case against Johnson. Seven months later, Petitioner retained O'Connell as counsel in connection with the same crime. In our view, O'Connell's representation of Johnson ended well before her representation with Petitioner began. Therefore, this is not a case of multiple concurrent representation, so the *Strickland* standard applies.

In light of the foregoing, Cuyler does not demonstrate that the state courts' adjudication of the conflict-of-counsel claim was contrary to or an unreasonable application of Supreme Court precedent.

Ground Two was addressed on the merits by the post-sentencing court, Post Sentencing Op. at 11 - 13, as well as by the Superior Court in its opinion on direct appeal, Dkt. [10] at 51 to

54.  Ground Three was addressed on the merits by the Superior Court in its opinion on direct

appeal.  Dkt. [10] at 54 to 55.  Ground Four was addressed on the merits by the post-sentencing

Court.  Post Sentencing Op. at 7 - 10. The Superior Court on direct appeal found Ground Four to

have been waived because it was not developed in the brief.  Dkt. [10-2] at 1.  However, the

Superior Court also went on to find that "trial counsel testified at the post-sentence hearing and

explained his reasons for calling certain persons as defense witnesses and for not calling other

persons. The lower court accepted this testimony, and we find that it acted within its discretion in

accepting counsel's explanation for his presentation of the defense case."  Id., at 1.  We find that

this constitutes an alternative holding by the Superior Court that Petitioner's trial counsel had a

reasonable basis for acting as he did and hence, no ineffectiveness could be established.  Ground

Five alleges that evidence, i.e., certain clothing, which should have been suppressed due to an

alleged lack of probable cause was erroneously admitted at trial rendering his trial fundamentally

unfair.  This is, in essence, an assertion that evidence was admitted at trial in violation of his

Fourth Amendment rights.  Such a claim is barred by Stone v. Powell, 428 U.S. 465, 494

(1976)("where the State has provided an opportunity for full and fair litigation of a Fourth

Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground

that the evidence obtained in an unconstitutional search or seizure was introduced at his trial.") .[7]

_____

[7]  The state courts provided Petitioner an opportunity to litigate this Fourth Amendment
claim.  Moreover, it is Petitioner's burden to show that the prohibition of Stone v. Powell is not
applicable. Sanna v. Dipaolo, 265 F.3d 1, 8 (1st Cir. 2001)("The petitioner bears the burden of
proving that his case fits within the contours of the [Stone v. Powell] exception"); Davis v.
Blackburn, 803 F.2d 1371, 1372 (5th Cir. 1986); Doleman v. Muncy, 579 F.2d 1258, 1266 (4th
Cir. 1978).  Petitioner has failed to even argue that he fits within the Stone v. Powell exception to
the general rule that Fourth Amendment claims are not cognizable in a federal habeas petition.
Because Petitioner fails to show, as is his burden, why the rule of Stone v. Powell should not
control here, the rule is applicable and serves to preclude the District Court from granting

Alternatively, the post sentencing court addressed this issue or at least a slight variation of this issue on the merits. Post Sentencing Op. at 13. <u>See</u> <u>also</u> Trial Court's Opinion disposing of Pre-trial motions, at 4 - 7. In addition, the Superior Court addressed this issue on the merits in its opinion on direct appeal. Dkt. [10-2] at 1 to 2. Even if this Court were to review this Fourth Amendment issue de novo, it would conclude the same as the state courts did. Ground Six, concerning a denial of due process because of the trial court's failure to grant a change of venue or venire, was addressed on the merits by the post sentencing court. Post Sentencing Op. at 14. The Superior Court found that this issue was waived because of Petitioner's "failure to properly develop this [issue] on appeal[.]" Dkt. [10-2] at 4. But in an alternative holding, the Superior Court addressed this issue on the merits and found it to be meritless because there was no evidence to support the necessity of a change of venue. Dkt. [10-2] at 4 ("the lack of evidentiary

---

Petitioner relief on his claim.

    The rule of <u>Stone v. Powell</u> remains good law even after the enactment of AEDPA. In other words, the inquiry post-AEDPA is not whether the state courts' adjudication of the Fourth Amendment claims was contrary to or an unreasonable application of United States Supreme Court precedent but the proper inquiry is the <u>Stone v. Powell</u> inquiry of whether the state provided a full and fair opportunity to litigate the Fourth Amendment claim. <u>See</u>, <u>e.g.</u>, <u>Sanna v. Dipaolo</u>, 265 F.3d 1, 8-9 (1st Cir. 2001). <u>Accord</u>, <u>Marshall v. Hendricks</u>, 307 F.3d 36, 81-82 (3d Cir. 2002)(applying rule of <u>Stone v. Powell</u> to habeas petition filed post AEDPA and not applying AEDPA's contrary to/unreasonable application analysis).

    Likewise here, in this case filed post AEDPA, even if we assumed the contrariness or unreasonableness of the state courts' adjudication under AEDPA, such would not overcome the <u>Stone v. Powell</u> rule that Fourth Amendment claims are not cognizable in federal habeas because the Commonwealth has provided Petitioner a full and fair opportunity to litigate the claim. <u>See</u> <u>e.g.</u>, <u>White v. Galaza</u>, No. C 99-2900, 2000 WL 630861, *3 (N.D. Cal. May 8, 2000)("If [petitioner] White had the opportunity to litigate his Fourth Amendment claim, it cannot be the basis for granting his habeas petition, even if the state court's decision on his claim was contrary to clearly established Supreme Court precedent or involved an objectively unreasonable application of such precedent.")(citing <u>Williams v. Taylor</u>, 120 S.Ct. 1495, 1503 (2000)(wherein the Supreme Court noted it is "well settled that the fact that constitutional error occurred in the proceedings that led to a state-court conviction may not alone be sufficient reason" to grant a habeas petition, and citing <u>Stone v. Powell</u>, as an example of such an error)).

support leads to the conclusion that the issue is without merit. There is nothing present in the record to support a finding that any greater media attention was paid to the instant matter than to other murder cases in the jurisdiction or that appellant was prejudiced by the publicity. He has failed to carry his burden to show that the jury was prejudiced by press coverage either of the pre-trial proceedings or of the trial while it was in progress."). Dkt. [10-2] at 4. Again, Petitioner failed to show that the state courts' adjudication of Ground Six, and indeed, of any of the foregoing Grounds was contrary to or an unreasonable application of extant Supreme Court precedent, nor did he show that the StateCourts unreasonably determined any facts.

Ground Seven was not addressed by the Statecourts on the merits. Although Petitioner raised this issue before the PCRA trial court, because Petitioner did not raise this issue in his appeal to the Superior Court from the PCRA trial court's judgment, it is procedurally defaulted.

In the alternative, the Apprendi/Blakely issue does not afford Petitioner relief because, even reviewing this issue de novo,[8] it is apparent that the issue is meritless. Petitioner argues that his Sixth, Fifth and Fourteenth Amendment rights were violated when the "trial court exceeded

---

[8] Where the state courts did not address a federal legal claim and the federal habeas court does entertain such federal claim on the merits, then "the federal habeas court must conduct a de novo review over pure legal questions and mixed questions of law and fact, as a court would have done prior to the enactment of AEDPA. However, the state court's factual determinations are still presumed to be correct, rebuttable upon a showing of clear and convincing evidence." Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001). Accord Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir.2001); Weeks v. Angelone, 176 F.3d 249, 258 (4th Cir. 1999).

statutory maximum on own findings, not based on jury findings." Dkt. [1] at 8.[9] The holding of

Apprendi and its progeny has been well summarized by the Supreme Court:

> Our precedents make clear ... that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant .... In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment,' ... and the judge exceeds his proper authority."

Cunningham v. California, 127 S.Ct. 856, 865 (2007)(quoting Blakely v. Washington, 542 U.S.

296, 303 (2004))(emphasis deleted).

In Petitioner's case however, the trial court did not in fact exceed the statutory maximums

permitted by the jury verdicts of guilt as to the crimes for which Petitioner was convicted. Those

crimes were as follows. Petitioner was convicted of : (1) Third Degree Murder [of Jamar Willie

Burns], 18 Pa.C.S.A. § 2502(c); and (2) Attempted Criminal homicide [of Anwan Rasheed

Wesley], 18 Pa.C.S.A. §2702(a)(1) and (3) of Aggravated Assault [on Mr. Wesley], 18 Pa.C.S.A.

§ 901. Murder of the Third Degree is subject to a statutory maximum sentence of 40 years. 18

Pa. C.S.A. § 1102(d) (the statutory maximum sentence of one who has been convicted of murder

of the third degree is 40 years). See also Glover v. Wander, Slip Copy, 2007 WL 1725236, at *2

_____

[9] The Court rejects the Respondents' contention that Petitioner **never** raised this issue in the state courts. Dkt. 7 at 15 to 16, ¶ 44. In the amended PCRA petition filed by counsel, this issue was listed as "Issue B," which was explained as follows: "Was counsel ineffective for failing to raise, brief, and preserve for the record whether the Sixth Amendment of the United States Constitution permits a judge to find facts (other than facts relating to a defendant's criminal history) not in the record, not reflected in a jury's verdict or admitted by the Petitioner, that form the basis for determining the petitioner's sentencing range?" However, it does appear that Petitioner abandoned this issue by not raising it in his appeal brief to the Superior Court. Hence, in addition to being meritless, this issue is procedurally defaulted for having failed to raise the issue in the Superior Court appeal brief.

(W.D.Pa. June 11, 2007) ("Under federal habeas corpus jurisprudence, so long as an imposed sentence is within the state statutory sentencing range, it will not provide a basis for federal habeas corpus relief. Burden v. Filion, 421 F.Supp.2d 581, 588 (W.D.N.Y.2006). Petitioner was sentenced to 15 to 40 years for murder of the third degree, a felony of the first degree, 18 Pa. Cons.Stat. § 2502(c), for which the maximum possible sentence is 40 years. 18 Pa. Cons.Stat. § 1102(d)."). Here the jury verdict of guilt on the Third Degree charge alone permitted Petitioner to be sentenced up to the statutory maximum of 40 years. In fact, on the crime of Third Degree Murder, Petitioner was sentenced to not less than 20 years nor more than 40 years. PCRA Trial Court slip op., at 1 ("the Defendant was sentenced to a period of incarceration of not less than twenty (20) years nor more than forty (40) years for Third Degree Murder."). As the judge's sentence for this crime did not exceed the statutory maximum, there is no Apprendi or Blakely issue.

As to the Attempted Criminal Homicide conviction relating to Mr. Wesley, it appears that the maximum sentence permitted by the jury's verdict of guilt was 20 years. See, e.g., 18 Pa.C.S. § 1102(c).[10] See also Commonwealth v. Johnson, 910 A.2d 60, 67-8 (Pa.Super. 2006)("Here, however, (1) appellant was not charged with attempted murder resulting in serious bodily injury,

---

[10] 18 Pa.C.S. § 1102(c) provides in relevant part that

(c) Attempt, solicitation and conspiracy to commit murder or murder of an unborn child.--Notwithstanding section 1103(1) (relating to sentence of imprisonment for felony), a person who has been convicted of attempt, solicitation or conspiracy to commit murder or murder of an unborn child where serious bodily injury results may be sentenced to a term of imprisonment which shall be fixed by the court at not more than 40 years. Where serious bodily injury does not result, the person may be sentenced to a term of imprisonment which shall be fixed by the court at not more than 20 years.

(2) appellant was not on notice that the Commonwealth sought either to prove that a serious bodily injury resulted from the attempted murder or to invoke the greater maximum sentence, and (3) the jury was never presented with, nor rendered a decision on, the question of whether a serious bodily injury resulted from the attempted murder. Thus, the jury verdict here was limited to a finding of guilt on the crime of attempted murder generally, for which the maximum sentence is twenty years.")(footnotes omitted). In fact, on the charge of attempted criminal homicide Petitioner was only sentenced to seven to fourteen years. PCRA Trial Court slip op. at 1. Hence, Petitioner was not sentenced beyond the statutory maximum for this conviction. Accordingly, there is no Apprendi/Blakely issue.

Lastly, Petitioner was convicted by the jury of Aggravated Assault, 18 Pa.C.S.A. §2702(a)(1), which provides that "(a) Offense defined.--A person is guilty of aggravated assault if he: (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" Furthermore, Section 2702(b) provides that "Grading.--Aggravated assault under subsection (a)(1) and (2) is a felony of the first degree."[11] Hence, the maximum sentence the jury's verdict permitted upon the finding of guilt as to the Aggravated Assault under 18 Pa.C.S.A. § 2702(a)(1) charge was 20 years. In fact, the trial judge sentenced Petitioner to not

---

[11] 18 Pa.C.S.A. § 1103 provides in relevant part that

Except as provided in 42 Pa.C.S. § 9714 (relating to sentences for second and subsequent offenses)[which does not apply in Petitioner's case], a person who has been convicted of a felony may be sentenced to imprisonment as follows:

(1) In the case of a felony of the first degree, for a term which shall be fixed by the court at not more than 20 years.

less than six nor more than twenty years on the aggravated assault conviction. PCRA Trial Court slip op. at 1. Hence, there is no Apprendi/Blakely issue presented by these facts. Accordingly, Ground Seven affords Petitioner no relief.

As Petitioner has failed to carry his burden to show that the state courts' disposition of his claims, which they had addressed on the merits were contrary to or an unreasonable application of extant federal Supreme Court case law or an unreasonable determination of the facts,[12] he has failed to show entitlement to relief for those claims. As to the claims that the state courts did not adjudicate on the merits, which were the Apprendi/Blakely claims, Petitioner has procedurally defaulted those claims or, in the alternative, failed to show any merit as to those claims. Accordingly, Petitioner's habeas petition should be denied.

In his traverse, Petitioner appears to invoke a claim of "actual innocence." Dkt. [10] at 17 to 29. It is not clear whether Petitioner is making a free standing claim of actual innocence or whether he is making a gateway claim of actual innocence.[13] However, at least with respect to

_____

[12] Only one of Petitioner's arguments about an unreasonable determination of the facts need be addressed. Petitioner contends that the state courts' determination that Petitioner possessed a knife and stabbed the victims was unreasonable. Dkt. [10] at 24. In fact, it was the jury, and not the state courts, who determined this via their guilty verdicts. Moreover the jury's verdicts were sufficiently supported by the record. The testimony of Mr. Jones, a friend of the murder victim, Mr. Burns, amply supports the finding that Petitioner stabbed Mr. Burns, where Mr. Jones testified that he saw Petitioner had something in his hand, but could not see it, but believed it to have been a weapon, and when he saw Petitioner making punching motions into the abdomen area of Mr. Burns with the hand that had something in it, and observing Mr. Burns stumble and fall to the ground and then running over to Mr. Burns and finding him bleeding from the abdomen area. Mr. Wesley's testimony likewise amply supports that aggravated assault and attempted murder convictions.

[13] The Supreme Court in Schlup v. Delo, 513 U.S. 298, 327 (1995), explained that an actual innocence claim in the context of seeking to have a procedural default "forgiven" so as to have the procedurally defaulted claims reviewed on the merits is a "gateway" claim. In other words, the claim of actual innocence in the Schlup context is **not** a claim that because I am

some of his claims of ineffective assistance of counsel, which he raises in his traverse, it appears

that he is making a gateway claim. See Dkt. [10] at 23 ("Petitioner moves to litigate some claims

of ineffective assistance of counsel under the standard of 'actual innocence' which has not been

entertained by state court, due to Six Amendmend [sic] Violation, as well as constitutional

violations which rise to the level of 'structural trial violations[.]'")

The only proper way for Petitioner to present to this court the current claims of counsels'

ineffectiveness, which he raises in his traverse, and which were not presented to the state courts,

is for Petitioner to establish that this court's failure to address these issues on the merits would

constitute a miscarriage of justice.[14] The phrase "miscarriage of justice" has been explained by

the Supreme Court to require a showing that "a constitutional violation has probably resulted in

the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327 (1995);

United States v. Sorrells, 145 F.3d 744, 749 n.3 (5th Cir. 1998)("The 'actually innocent' standard

_____

actually innocent by virtue of that fact alone I am entitled to federal habeas relief but, rather, is a
claim that contends because I am actually innocent, the court should forgive my procedural
default in the state courts and consider my procedurally defaulted claims on their merits. Schlup,
513 U.S. at 315. The Court in Schlup contrasted such a "gateway" claim to a "freestanding"
claim of actual innocence, such as raised in Herrera v. Collins, 506 U.S. 390 (1993), wherein the
claim was precisely, because I am actually innocent, by virtue of that fact alone, I am entitled to
federal habeas relief.

[14] The other exception to procedural default, namely "cause and prejudice," would not
apply here because the only claim of cause Petitioner could now have is that his PCRA counsel
was ineffective for failing to raise the ineffectiveness of all prior counsel for failing to raise the
issues Petitioner now seeks to litigate. However, because there is no federal constitutional right
to counsel in state PCRA proceedings, the ineffectiveness of PCRA counsel cannot serve as
"cause." Coleman v. Thompson, 501 U.S. 722, 757 (1991) ("Because [the petitioner] had no
right to counsel to pursue his appeal in state habeas, any attorney error that led to the default of
[his] claims in state court cannot constitute cause to excuse the default in federal habeas."); Hull
v. Freeman, 991 F.2d 86, 91 (3d Cir. 1993) ("Under Coleman, ineffective assistance of post-
conviction counsel cannot constitute 'cause' because the Sixth Amendment does not entitle a
defendant to post-conviction counsel.").

19

is the same as the 'fundamental miscarriage of justice' standard, which applies 'when a

constitutional violation probably has caused the conviction of one innocent of the crime.'").

Moreover, "actually innocent" means factual innocence and not just legal innocence. <u>See</u>

<u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998)("[T]he miscarriage of justice exception is

concerned with actual as compared to legal innocence.").

> In order to make a showing of "actual innocence" a petitioner must
>
> satisfy a two-part test in order to obtain review of otherwise procedurally barred
> claims. First, the petitioner's allegations of constitutional error must be supported
> with new reliable evidence not available at trial. *Schlup*, 513 U.S. at 327-28.
> Second, the petitioner must establish "that it is more likely than not that no
> reasonable juror would have convicted him in light of the new evidence." *Id*. at
> 327.

<u>Amrine v. Bowersox</u>, 238 F.3d 1023, 1029 (8th Cir. 2001), <u>cert</u>. <u>denied</u>, 122 S.Ct. 372 (2001).[15]

It is not enough that in light of the new evidence a reasonable doubt may exist as to the

Petitioner's guilt; the test is more onerous because Petition must show that no reasonable juror

would have found him guilty. <u>Schlup</u>, 513 U.S. at 329. Petitioner has failed to meet this

standard as he has failed to point to any new evidence of innocence.[16]

---

[15] There does appear to be one narrow exception to the requirement of producing new evidence in order to successfully demonstrate a "miscarriage of justice." <u>See</u>, <u>e.g.</u>, <u>United States v. Garth</u>, 188 F.3d 99 (3d Cir. 1999). However, for reasons explained in <u>Sweger v. Chesney</u>, 294 F.3d 506, 523 n.18 (3d Cir. 2002) and <u>Gale v. Rozum</u>, No. 06-CV-1266, 2006 WL 2092572 (M.D.Pa. July 25, 2006), the narrow <u>Garth</u> exception does not apply here. Whereas in <u>Garth</u>, a subsequent construction of a criminal statute by the United States Supreme Court may have rendered the petitioner not guilty of the crime, no such factual scenario is present here.

[16] To the extent that Petitioner is making a free standing actual innocence claim, i.e., claiming that his actual innocence is itself a ground for constitutional relief, i.e., it violates the constitution to punish an innocent person even if there were no constitutional errors committed, as was made in <u>Herrera v. Collins</u>, 506 U.S. 390 (1993), the court's conclusion above that Petitioner did not meet the lesser standard under <u>Schlup v. Delo</u>, resolves that claim under the more stringent standard of <u>Herrera</u>. <u>See Schlup v. Delo</u>, 513 U.S. at 316-317; <u>Thomas v. Taylor</u>,

**Certificate of Appealability Should Be Denied**

A certificate of appealability is required by 28 U.S.C. § 2253(c) before a petitioner who has been denied relief may appeal to a court of appeals. As amended by AEDPA, section 2253 provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." In order to make a "substantial showing of the denial of a constitutional right," the habeas "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). It does not appear that reasonable jurists would find the recommended disposition, should it be adopted, to be debatable or wrong. Accordingly, a certificate of appealability should be denied.

CONCLUSION

In accordance with 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed until _____ to file written objections to this report. Any party opposing the objections shall have until _____ to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

Respectfully submitted,

/s/ *Amy Reynolds Hay*
United States Magistrate Judge

Dated: 16 January, 2008

cc:     The Honorable Nora Barry Fischer

---

170 F.3d 466, 473 (4th Cir. 1999)("Regardless of whether we apply the more lenient standard of *Schlup* or the stricter standard of *Herrera* . . .").

United States District Judge

Harold Edwin Leaphart  - EZ-8537
S.C.I. at Smithfield
P.O. Box 999
1120 Pike Street
Huntingdon, PA 16652

All counsel of record via CM-ECF